IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

at Beckley



**GEORGE GOLF DESIGN, INC.,**

    Plaintiff,

v.    Case No. 5:10-1240

**GREENBRIER HOTEL CORPORATION,**
**and JAMES C. JUSTICE COMPANEIS, INC.,**

    Defendants.

## COMPLAINT

Comes now Plaintiff, George Golf Design, Inc. (hereinafter "GGD"), by its undersigned attorneys, and for its complaint against the Greenbrier Hotel Corporation (hereinafter "Greenbrier") and James C. Justice Companies, Inc. (hereinafter "JCJC") alleges the following based on its knowledge and upon information and belief:

## PARTIES

1. GGD is incorporated under the laws of the Commonwealth of Virginia and has its principal place of business in Richmond, Virginia.

2. The Greenbrier is a West Virginia corporation with its principal place of business being 300 West Main Street, White Sulphur Springs, Greenbrier County, West Virginia 24986. Pursuant to the West Virginia Secretary of State's Office, the Greenbrier has identified Theodore Humphreys, located at 300 West Main Street, White Sulphur Springs, Greenbrier County, West Virginia 24986, as its agent accepting service of process.

3. The JCJC is a Delaware Corporation with its principal place of business being 106 Lockheed Drive, Beaver, Raleigh County, West Virginia 25813. Pursuant to the West

Virginia Secretary of State's Office, JCJC has identified Stephen W. Ball, located at 106 Lockheed Drive, Beaver, Raleigh County, West Virginia 25813, as its agent accepting service of process.

### JURISDICTION AND VENUE

4. As the amount in controversy, excluding interest and costs, exceeds $75,000.00 and there is complete diversity among the parties, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

5. The Greenbrier and JCJC are subject to personal jurisdiction in this judicial district.

6. The Greenbrier transacts business in this judicial district, the actions complained of arose in this district, and venue is proper in this district.

### Factual Allegations

All allegations contained herein are made based upon personal knowledge and/or upon information and belief:

7. In August of 2009, James Justice (hereinafter "Justice"), on behalf of the Greenbrier, retained the services of GGD for assistance with preparing the Greenbrier for the upcoming PGA Tour event – The Greenbrier Classic.

8. The Greenbrier Classic was to be held on the Old White Golf Course which, along with other areas around the Greenbrier Complex, required renovation.

9. On August 3, 2009, Justice requested that Lester George, President of GGD, attend the press conference officially announcing the Greenbrier Classic.

10. During the press conference, Mr. George was specifically recognized for his previous contributions to PGA tour golf courses.

11. After retaining the services of GGD, the Greenbrier entered into several contracts with GGD for tasks related to the renovation of the Old White Golf Course.

12. The Greenbrier and GGD entered into separate contracts for:

   a. The Swan Lake Expansion Plan, redesign of Hole No. 16 on the Old White Golf Course, and the redesign of the driving range on the Old White;

   b. The design and implementation of the Greenbrier Logo;

   c. The design of the Old White's Landscaping Plan and overseeing the implementation of the Old White's Landscaping Plan; and

   d. Miscellaneous requested working including, but not limited to, landscaping designs with regard to the Tournament Entrance and Bus Drop Off;

13. Each of the tasks performed by GGD were specifically requested, reviewed and approved by the Greenbrier and/or Justice.

14. The Greenbrier and Justice approved the costs and fees for each task requested of GGD.

15. Despite the fact that Justice made numerous changes to the various tasks approved by him and assigned to GGD, all tasks were completed in a timely fashion.

16. All tasks requested of GGD were completed on or under budget.

17. GGD completed all work in accordance with the terms agreed upon by the parties.

18. During the project, GGD submitted invoices for work performed and received payment from the Greenbrier.

19. In April of 2010, the Greenbrier, without explanation, stopped paying GGD's expenses. Thereafter, the Greenbrier ceased paying all of GGD's invoices submitted for work requested, approved and accepted by the Greenbrier and Justice.

20. In July of 2010, without explanation, Justice instructed GGD that its services were no longer needed and took over supervision of the Landscaping Project.

21. GGD has never been paid for numerous tasks requested, approved and accepted by the Greenbrier and performed on time and on or under budget by GGD.

22. Due in large part to GGD's efforts, the Old White Golf Course received rave reviews during and following the Greenbrier Classic.

23. Through its agent, Justice, the JCJC entered into a contract with GGD to author a book entitled "The History of the Old White Golf Course" in April of 2010.

24. Justice and GGD engaged in extensive negotiations regarding the terms under which GGD would author the book.

25. Agreement was reached that GGD would author the book for the sum of $80,000.00 plus a percent of sales.

26. As the parties agreed, the JCJC paid GGD $20,000.00 in April of 2010.

27. GGD continued to work on the book as agreed by the parties.

28. GGD complied with all terms of the agreement between itself and JCJC.

29. Nevertheless, JCJC has refused to tender the monies earned and owed to GGD under the agreement.

### COUNT I (BREACH OF SWAN LAKE CONTRACT)

30. Plaintiff hereby adopts and incorporates by reference the allegations of paragraphs 1 through 29 of this *Complaint* as though set forth verbatim herein.

31. In May of 2010, GGD and the Greenbrier entered into a contract for the expansion of Swan Lake on the Old White, the redesign of Hole No. 16 on the Old White and the redesign of the driving range on the Old White.

32. GGD performed all aspects of the Swan Lake Contract in accordance with the terms agreed upon by the parties.

33. The Greenbrier breached the Swan Lake Contract by failing to pay GGD all sums owed under the Swan Lake Contract.

34. As a consequence of the Greenbrier's breach of the Swan Lake Contract, GGD has suffered damages for which it is entitled to compensation.

## COUNT II (BREACH OF LOGO CONTRACT)

35. Plaintiff hereby adopts and incorporates by reference the allegations of paragraphs 1 through 34 of this *Complaint* as though set forth verbatim herein.

36. In April of 2010, GGD and the Greenbrier entered into a contract for the design and implementation of the Greenbrier Logo on the Old White.

37. GGD performed all aspects of the Logo Contract in accordance with the terms agreed upon by the parties.

38. The Greenbrier breached the Logo Contract by failing to pay GGD all sums owed under the Logo Contract.

39. As a consequence of the Greenbrier's breach of the Logo Contract, GGD has suffered damages for which it is entitled to compensation.

## COUNT III (BREACH OF LANDSCAPING CONTRACT)

40. Plaintiff hereby adopts and incorporates by reference the allegations of paragraphs 1 through 39 of this *Complaint* as though set forth verbatim herein.

41. In April of 2010, GGD and the Greenbrier entered into a contract for the design of Old White's landscaping and overseeing the implementation of the landscaping design.

42. GGD performed all aspects of the Landscaping Contract in accordance with the terms agreed upon by the parties.

43. The Greenbrier breached the Landscaping Contract by failing to pay GGD all sums owed under the Landscaping Contract.

44. As a consequence of the Greenbrier's breach of the Landscaping Contract, GGD has suffered damages for which it is entitled to compensation.

### COUNT IV (BREACH OF MISCELLANEOUS CONTRACT)

45. Plaintiff hereby adopts and incorporates by reference the allegations of paragraphs 1 through 44 of this *Complaint* as though set forth verbatim herein.

46. While GGD was at the Greenbrier performing the tasks requested of it under the aforesaid contracts, the Greenbrier and Justice requested that GGD perform numerous tasks outside the scope of the foresaid contracts.

47. The tasks preformed as part and parcel of the Miscellaneous Contract include, but are not limited to: (a) landscaping designs for the Tournament Entrance on the Old White; and (b) landscaping designs for the Bus Drop Off on the Old White.

48. GGD preformed only those tasks requested and approved by the Greenbrier and Justice with regard to the Miscellaneous Contract.

49. GGD performed all aspects of the Miscellaneous Contract in accordance with the terms agreed upon by the parties.

50. The Greenbrier breached the Miscellaneous Contract by failing to pay GGD all sums owed under the Miscellaneous Contract.

51. As a consequence of the Greenbrier's breach of the Miscellaneous Contract, GGD has suffered damages for which it is entitled to compensation.

## COUNT V (BREACH OF BOOK CONTRACT)

52. Plaintiff hereby adopts and incorporates by reference the allegations of paragraphs 1 through 51 of this *Complaint* as though set forth verbatim herein.

53. In April of 2010, GGD and JCJC entered into a contract for GGD to author "The History of the Old White Golf Course."

54. GGD performed all aspects of the Book Contract in accordance with the terms agreed upon by the parties.

55. JCJC breached the Book Contract by failing to pay GGD all sums owed under the Book Contract.

56. As a consequence of the JCJC's breach of the Book Contract, GGD has suffered damages for which it is entitled to compensation.

## COUNT VI (QUANTUM MERUIT – THE GREENBRIER)

57. Plaintiff hereby adopts and incorporates by reference the allegations of paragraphs 1 through 56 of this *Complaint* as though set forth verbatim herein.

58. GGD performed several tasks for the Greenbrier as set forth in Counts I through IV of this Complaint.

59. The Greenbrier accepted and benefitted from the aforesaid services provided by GGD.

60. The Greenbrier knew that GGD was providing the aforesaid services, pursuant to the Swan Lake Contract, Logo Contract, Landscaping Contract and Miscellaneous Contract – as instructed by Justice and/or employees of the Greenbrier.

61. The Greenbrier received payment applications for the work and correspondence regarding the manner in which the work was proceeding.

62. The Greenbrier knew that GGD was entitled to and expected to receive compensation for all work preformed.

63. The Greenbrier has not fully compensated GGD for the benefits it received for the services set forth in Counts I through IV of this Complaint.

64. It is wholly inequitable for the Greenbrier to request, approve, receive and benefit from the aforesaid services without paying GGD for the services.

### COUNT VII (QUANTUM MERUIT – JCJC)

65. Plaintiff hereby adopts and incorporates by reference the allegations of paragraphs 1 through 64 of this *Complaint* as though set forth verbatim herein.

66. GGD has authored "The History of the Old White Golf Course" as instructed by JCJC and Justice.

67. JCJC accepted and benefitted from the aforesaid service provided by GGD.

68. JCJC knew that GGD was providing the aforesaid service, pursuant to the Book Contract – as instructed by Justice and/or employees of JCJC.

69. JCJC received payment applications for the work and correspondence regarding the manner in which the work was proceeding.

70. JCJC knew that GGD was entitled to and expected to receive compensation for all work preformed.

71. JCJC has not fully compensated GGD for the benefits it received from GGD authoring "The History of the Old White Golf Course."

72. It is wholly inequitable for JCJC to request, approve, receive and benefit from the aforesaid service without paying GGD for the service.

### COUNT VIII (BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING – THE GREENBRIER)

73. Plaintiff hereby adopts and incorporates by reference the allegations of paragraphs 1 through 72 of this *Complaint* as though set forth verbatim herein.

74. The Greenbrier is subject to a covenant of good faith and fair dealing when entering into and performing under any contract into which it enters.

75. The Greenbrier has breached the covenant of good faith and fair dealing by refusing to pay GGD for work that the Greenbrier specifically requested, approved, received and from which it benefitted.

76. As a consequence of the Greenbrier's breach of the covenant of good faith and fair dealing, GGD has suffered damages for which it is entitled to compensation.

### COUNT IX (BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING – JCJC)

77. Plaintiff hereby adopts and incorporates by reference the allegations of paragraphs 1 through 76 of this *Complaint* as though set forth verbatim herein.

78. JCJC is subject to a covenant of good faith and fair dealing when entering into and performing under any contract into which it enters.

79. JCJC has breached the covenant of good faith and fair dealing by refusing to pay GGD for work that JCJC specifically requested, approved, received and from which it benefitted.

80. As a consequence of JCJC's breach of the covenant of good faith and fair dealing, GGD has suffered damages for which it is entitled to compensation.

### PRAYER

**WHEREFORE**, Plaintiff demands judgment against Defendants, both jointly and severally, for damages as follows:

a. $139,885.00 owed on the Swan Lake Contract, Logo Contract, Landscaping Contract and Miscellaneous Contract;

b. $60,000.00 owed on the Book Contract;

c. Any and all other incidental or consequential loss caused by the Greenbrier's breach of the Swan Lake Contract, Logo Contract, Landscaping Contract and Miscellaneous Contract;

d. Any and all other incidental or consequential loss caused by the JCJC's breach of the Book Contract;

e. Pre-judgment and Post-judgment interest; and

f. Any further relief this Court deems just and reasonable.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

GEORGE GOLF DESIGN, INC.

By: The Tinney Law Firm, PLLC

*/s/ John H. Tinney*
John H. Tinney (W.Va. Bar #3766)
John K. Cecil (W.Va. Bar #9155)
P. O. Box 3752
Charleston, WV 25337-3752
(304) 720-3310