IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

GEORGE GOLF DESIGN, INC.,
and LESTER L. GEORGE,

        Plaintiffs,

v.

                                            Case No. 5:10-cv-01240
                                            (Irene C. Burger, Judge)

GREENBRIER HOTEL CORPORATION,
JAMES C. JUSTICE COMPANIES, INC., and
JAMES C. JUSTICE, II,

        Defendants.

## JAMES C. JUSTICE II'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

    Comes now Defendant James C. Justice, II ("Mr. Justice") by counsel, pursuant to the

Rules of Civil Procedure 26, 33, and 34, and for his Responses to the Plaintiffs' First Set of

Interrogatories and Requests for Production of Documents, states as follows:

### GENERAL RESPONSES AND OBJECTIONS

    1.    Mr. Justice objects to the Interrogatories and Requests for Production of

Documents to the extent that they seek information which is protected by the attorney-client

privilege, which constitutes work product, or which is otherwise protected from discovery.

    2.    Mr. Justice objects to the Interrogatories and Requests for Production of

Documents to the extent that they seek information that is not relevant and/or not reasonably

calculated to lead to the discovery of admissible evidence.

    3.    Mr. Justice objects to the Interrogatories and Requests for Production of

Documents to the extent they are overly broad, unduly burdensome, and/or duplicative.



EXHIBIT
A

4.      Mr. Justice objects to the Interrogatories and Requests for Production of Documents to the extent that they purport to impose obligations on him beyond those set forth in Rules of Civil Procedure 26, 33, and/or 34.

5.      Mr. Justice objects to the Interrogatories and Requests for Production of Documents to the extent they are vague, ambiguous, and confusing.

6.      Mr. Justice objects to each document request to the extent that it attempts to impose a duty on him to produce documents not in its possession, custody, or control.

7.      Mr. Justice objects to each document request to the extent it seeks documents containing confidential, proprietary or otherwise sensitive information.

8.      Mr. Justice reserves the right to demand the return of any document containing privileged material that may be produced inadvertently by him.

9.      Mr. Justice objects to each of the interrogatories on the basis that plaintiffs have exceeded the number of interrogatories allowed pursuant to Rule 33 of the Federal Rules of Civil Procedure.

10.     Mr. Justice objects to the use of the term "Book Contract" as that term is vague and ambiguous.

11.     Mr. Justice incorporates these General Objections in each of his responses to the following specific interrogatories and document requests, and any restatement of one or more of these General Objections in response to any specific interrogatory or document request shall not be construed as a waiver of any other General Objection.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Please identify each person, providing titles of each, address, and telephone numbers, who assisted in preparing answers to these interrogatories and requests for production of documents.

**ANSWER:** F. William Hardt III whose title, address, and telephone number appears at the end of this document.

**INTERROGATORY NO. 2:** For each individual Justice intends to call as an expert witness, please state:

a.    The expert's name and address;

b.    The expert's area(s) of expertise;

c.    The subject matter(s) on which said expert is expected to testify;

d.    The substance of facts and opinions to which the expert is expected to testify;

e.    A summary of the grounds for each such opinion, including, but not limited to, all factual information, documents and other matters upon which said expert may rely for his/her opinion.

**ANSWER:** Mr. Justice objects to this interrogatory on the basis that discovery is ongoing. Mr. Justice will abide by the Court's Scheduling Order and any other orders of the Court concerning disclosure of his expert witnesses. Mr. Justice reserves his right to supplement and/or amend his response to this interrogatory.

**INTERROGATORY NO. 3:** Identify each and every conversation, discussion or meeting between Justice and any employee, agent or representative of GGD regarding GGD, George, renovations and/or landscaping done at the Old White Golf Course performed between May of 2010 and September of 2010, and the Book Contract by identifying: the participant(s)

involved in each conversation, discussion or meeting; the date of the conversation, discussion or meeting; the specific subject matter of each conversation, discussion or meeting; and what was generally said by each participant.

ANSWER:    Mr. Justice objects to this interrogatory on the basis that it is overly broad and unduly burdensome.  Mr. Justice is unable to recall specifically each and every conversation, discussion or meeting between him and any employee, agent or representative of GGD regarding GGD, George, renovations and/or landscaping done at the Old White Golf Course performed between May 2010 and September 2010, and the Book Contract.  Mr. Justice recalls meeting with Lester George on or about April 8, 2010 to discuss the book and landscaping on the Old White Golf Course; meeting with Lester George and Ms. Hartough on or about May 3, 2010 to discuss the book; meeting with Lester George, Glenn Muckley, and Nathan Rosso, at which meeting Mrs. Justice was also present, on or about May 12, 2010 to discuss the landscape color plan for the Old White Golf Course; meeting with Lester George, Nathan Rosso, and Ronnie Adkins on or about May 24, 2010 concerning estimates for the color landscaping around the Old White Golf Course; and meeting with Lester George on or about July 7, 2010 regarding the termination of Lester George and George Golf Design from its work on the Old White Golf Course at which time Mr. George told Mr. Justice that Aspen, and not the Greenbrier, was paying him.  Mr. Justice reserves his right to supplement and/or amend his answer to this interrogatory.

INTERROGATORY NO. 4:    Identify each and every conversation, discussion or meeting between Justice and any employee, agent or representative of the Greenbrier regarding GGD, George, landscaping renovations and/or landscaping done at the Old White Golf Course performed between May of 2010 and September of 2010, and the Book Contract by identifying:

the participant(s) involved in each conversation, discussion or meeting; the date of the conversation, discussion or meeting; the specific subject matter of each conversation, discussion or meeting; and what was generally said by each participant.

**ANSWER:** Mr. Justice objects to this interrogatory on the basis that it is overly broad and unduly burdensome. Mr. Justice is unable to recall specifically each and every conversation between him and any employee, agent or representative of the Greenbrier regarding GGD, George, landscaping renovations and/or landscaping done at the Old White Golf Course performed between May of 2010 and September of 2010, and the Book Contract. Mr. Justice generally recalls speaking with Robert Cochran around late June 2010 regarding his concerns with Lester George, George Golf Design, and Aspen's work on the Old White Golf Course. Specifically, Mr. Justice relayed his concerns related to the following:

(a)  Most of the roughly 168 plant beds had not even been completely installed, and, in fact, the only work on these plant beds that had been accomplished at that point was merely the roughing out of the shape of the beds.

(b)  Most of the flowers and other plant material had not been installed.

(c)  Many plant beds still needed irrigation installation. Irrigation installation involves laying and covering necessary pipes/hoses, valves, controls and sprinkler systems in the plant beds to ensure that the plants have adequate water to ensure they will live, thrive and flower to their full potential.

(d)  Many plant beds still needed soil amendment. Soil amendment involves turning and treating the soil, including adding nutrients and/or new soils, to ensure the plants have soil in which they will live, thrive and flower to their full potential.

5

(e) Much hardscape work, including, without limitation, building walls, still needed to be accomplished. Hardscape work involves installing and erecting structures such as walls or fencing and the like to protect the plants and aesthetically to complement and enhance the landscaping.

(f) The sod installation also needed to be done.

(g) Workers were frequently standing around doing nothing with little-to-no direction, guidance, or oversight from George or GGD.

Mr. Justice also at that time tasked Mr. Cochran to be his client representative for the Greenbrier with regard to the landscaping services to be performed. During the first days of July 2010, Mr. Cochran spoke with Mr. Justice confirming Mr. Justice's concerns related to the work on the Old White Golf Course. Specifically, Mr. Cochran told Mr. Justice that in his opinion work was way behind schedule in finishing the Colors and Time and Materials projects and that much work still needed to be accomplished in the roughly three weeks before the designated completion date of July 20, 2010 and the kickoff of the Greenbrier Classic Golf Tournament, including, without limitation, all of the work previously identified above. Mr. Cochran also spoke with Mr. Justice around the time of the completion of the Greenbrier Classic, but before the filing of this lawsuit, relaying to him that if Mr. Justice had not involved Mr. Cochran and other workers into the project the work would not have been completed on time. Prior to the filing of this lawsuit, Mr. Justice spoke several times with Mr. Cochran concerning the death of annual flowers that had been planted on the projects. During one of those conversations, Mr. Justice told Mr. Cochran that the soil probably was the problem or else the replacement and fungus-free plants would not have suffered the same fate. Mr. Cochran then assured Mr. Justice that soil samples would be taken and tested promptly. Shortly thereafter around August 2010,

Mr. Cochran notified Mr. Justice of the soil sample results prior to the filing of this lawsuit. The soil analysis completed by A&L Eastern Laboratories, Inc. revealed that the soil in the annual beds for the Colors project contained high pH levels detrimental to annual flowers and was otherwise lacking in the proper levels of certain nutrients needed to grow annual flowers. Subsequently, Mr. Cochran also spoke with Mr. Justice about an August 24, 2010 letter he received from Jim Monroe, owner of Greenbrier Nurseries, stating, among other things, that the soil tested by A&L showed that the soil was "toxic" to annuals. Likewise, prior to the filing of this lawsuit, Mr. Justice and Mr. Cochran spoke with Mr. Monroe to obtain his expert opinion as to what was causing the death of the annuals that Aspen planted as part of the Colors project. Mr. Monroe confirmed to Mr. Justice and Mr. Cochran that the annuals were dying because the soil that Aspen and George Golf Design were responsible for properly amending in the annual flower beds was "toxic" to annuals. Around that same time, Mr. Monroe and members of the Greenbrier Grounds and Horticulture Department informed Mr. Justice and showed him pictures evidencing that many of the shrubs and trees planted by Aspen while under George Golf Designs' supervision had been planted too low in the ground while also leaving the burlap and rope around the trunk of virtually every shrub and tree – effectively choking those plants to death. Mr. Justice reserves his right to amend and/or supplement his answer to this interrogatory.

**INTERROGATORY NO. 5:**   Please identify each and every change requested by Justice to the landscaping and renovation plan authored by George and GGD and approved by the Greenbrier for the Old White Golf Course from May of 2010 through July 6, 2010 by providing: the specific change requested; the date it was requested; why the change was requested; the location of the change; whether plants had to be removed to implement the change; the specific plants selected; who selected the replacement plants; why new plants were

selected; the plants replaced; the additional cost incurred by the change; and how long Aspen had to implement the change.

**ANSWER:** Mr. Justice refers plaintiffs to the Greenbrier's Amended Answer to Interrogatory No. 12 and his deposition transcript in which he answered these very questions. Mr. Justice reserves his right to amend and/or supplement his answer to this interrogatory.

**INTERROGATORY NO. 6:** Please identify all changes to the Tournament Operations Landscaping Conceptual (GGD000221) the field drawings done by GGD (GGD000163-181) and the June 1, 20110 plant list (GGD000188-189) made by the Greenbrier on the Old White Golf Course after GGD was terminated on July 7, 2010 by providing: the date of the change; who made the change; who oversaw implementation of the change; when the change was completed; how the change altered the original design of GGD; and the cost of the change.

**ANSWER:** Mr. Justice, in his individual capacity, does not have the information necessary to answer this interrogatory in his possession, custody, or control. Mr. Justice reserves his right to amend and/or supplement his answer to this interrogatory.

**INTERROGATORY NO. 7:** Please identify the number of flowers planted on the Old White Golf Course after GGD was terminated on July 7, 2010 by providing: the date the flowers were planted; the number planted on each date; the type of flower planted; where the flowers were planted; who planted the flowers; and who oversaw the planting of the flowers.

**ANSWER:** Mr. Justice, in his individual capacity, does not have the information necessary to answer this interrogatory in his possession, custody, or control. Mr. Justice reserves his right to amend and/or supplement his answer to this interrogatory.

**INTERROGATORY NO. 8:**   Please identify the number of flowers ordered for the Old White Golf Course after GGD was terminated on July 7, 2010 by providing: the date the flowers were ordered; from what vendor the flowers were ordered; who ordered the flowers; the type of flowers ordered; the date the flowers arrived; and who inspected the flowers.

   **ANSWER:**   Mr. Justice refers plaintiffs to his Answer to Interrogatory No. 7.  Mr. Justice reserves his right to amend and/or supplement his answer to this interrogatory.

**INTERROGATORY NO. 9:**   Please state your financial position by providing your net worth for the last five years.

   **ANSWER:** Mr. Justice objects to this interrogatory on the basis that plaintiffs' request for information related to net worth at this stage in this proceeding is entirely premature. Plaintiffs' claims for punitive damages are, at best, speculative, and contingent upon a finding of liability – a finding that Mr. Justice vigorously contests. *See LaPlaca v. Odeh*, 428 S.E.2d 322, 324 (W.Va. 1993) ("[A] finding of compensatory damages by a jury is an indispensable predicate to a finding of exemplary or punitive damages").  To ask Mr. Justice to provide this information, which contains personal and sensitive business information, is unnecessary, and waiting until after dispositive motions have been filed regarding liability on plaintiffs' claims for punitive damages will not prejudice plaintiffs.  Mr. Justice should be required to present evidence of his net worth *only* if the Court finds that plaintiffs have presented sufficient evidence to seek punitive damages from the jury.  Moreover, Mr. Justice further objects on the basis that plaintiffs seek far more documents and other information than what would adequately demonstrate net worth for the purposes of punitive damages, and much of the requested information does not actually show net worth.  *See, e.g., In re House of Yahweh*, 266 S.W.3d 668, 673-74 (Tex. App. 2008) (improper for court to compel production of, *inter alia*, income tax

returns, bank statements, asset lists, and evaluations of financial performance, as such documents do not necessarily demonstrate net worth). Mr. Justice reserves his right to amend and/or supplement his answer to this interrogatory.

**INTERROGATORY NO. 10:** In the October 22, 2010 edition of The Charleston Daily Mail, Justice was quoted as stating that he and the Greenbrier saved the day in relation to the Greenbrier Classic by taking over control of the renovation and landscaping of the Old White Golf Course from GGD and Aspen. See, GGD001594-1597, Please identify what Justice did to "save the day" by providing: Justice's role in the renovating and landscaping of the Old White Golf Course in 2010; each and every task performed by Justice; each and every task that Justice directed another person to perform regarding the renovation and landscaping of the Old White Golf Course in 2010; who he directed to complete the task; when Justice started or directed someone to start the task; when the task was finished; whether the task constituted or required a change from the original GGD design approved by the Greenbrier and Justice; and the additional cost incurred because of the change.

**ANSWER:**   Mr. Justice refers plaintiffs to the Greenbrier's Amended Answer to Interrogatory No. 4 and his Answer to Interrogatory No. 4, above. Mr. Justice reserves his right to amend and/or supplement his answer to this interrogatory.

**INTERROGATORY NO. 11:** Identify Justice's role in: hiring GGD and/or George; negotiating and entering into contract(s) with GGD and/or George; inspecting and reviewing GGD's work with regard to renovating and landscaping the Old White Golf Course and the Book Contract; rejecting GGD's work; terminating GGD; reviewing GGD's invoices; and rejecting GGD's invoices.

**ANSWER:** Mr. Justice had final authority in hiring GGD and George, negotiating and entering into contracts with GGD and George, inspecting and reviewing GGD's work with regard to renovating and landscaping the Old White Golf Course and the Book Contract, rejecting GGD's work, terminating GGD, reviewing GGD's invoices, and approving those invoices. Mr. Justice reserves his right to amend and/or supplement his answer to this interrogatory.

**INTERROGATORY NO. 12:** Please identify each and every conversation that Justice had with any news organization, television station, radio station and/or newspaper regarding GGD, George, renovations and/or landscaping done at the Old White Golf Course performed between May of 2010 and September of 2010, and the Book contract by identifying: the participant(s) involved in each conversation, discussion or meeting; the date of the conversation, discussion or meeting; the specific subject matter of each conversation, discussion or meeting; and what was generally said by each participant.

**ANSWER:** Mr. Justice refers plaintiffs to the Greenbrier's Amended Answer to Interrogatory No. 15 and his deposition testimony on this very topic.  Mr. Justice reserves his right to amend and/or supplement his answer to this interrogatory.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:** Please produce a copy of any and all communications between Justice and GGD and/or George, which address, in any manner, GGD, George, renovations and/or landscaping done at the Old White Golf Course performed between May of 2010 and September of 2010, and/or the Book Contract, including but not limited to letters, electronic mail, faxes, notes, memoranda, reports, diaries, journals, phone logs, and transcripts.

11

**RESPONSE:** Mr. Justice refers plaintiffs to the Greenbrier's document production, which has been produced as it was maintained in the ordinary course of business. More specifically, Mr. Justice refers plaintiffs to the Greenbrier's Amended Response to Requests for Production No. 5. Mr. Justice reserves his right to amend and/or supplement his response to this request.

**REQUEST FOR PRODUCTION NO. 4:** [sic] Please produce a copy of any and all communications between Justice and the Greenbrier's employees, representatives and agents, which address, in any manner, GGD, George, renovations and/or landscaping done at the Old White Golf Course performed between May of 2010 and September of 2010, and/or the Book Contract, including but not limited to letters, electronic mail, faxes, notes, memoranda, reports, phone logs, diaries, journals and transcripts.

**RESPONSE:** Mr. Justice refers plaintiffs to the Greenbrier's document production, which has been produced as it was maintained in the ordinary course of business. More specifically, Mr. Justice refers plaintiffs to the Greenbrier's Amended Response to Requests for Production No. 6. Mr. Justice reserves his right to amend and/or supplement his response to this request.

**REQUEST FOR PRODUCTION NO. 5:** Please produce copies of all statements, speeches or quotes made to news organizations, newspapers, television stations, reporters, radio stations by Justice regarding the financial status of the Greenbrier from January 2010 through the present.

**RESPONSE:** Mr. Justice has no documents responsive to this request in his possession, custody, or control. Mr. Justice reserves his right to amend and/or supplement his response to this request.

12

**REQUEST FOR PRODUCTION NO. 6:**   Please produce copies of all statements, speeches or quotes made to news organizations, newspapers, television stations, reporters, radio stations by Justice regarding Justice's finances and/or net worth from January 2010 through the present.

**RESPONSE:** Mr. Justice has no documents responsive to this request in his possession, custody, or control. Mr. Justice reserves his right to amend and/or supplement his response to this request.

**REQUEST FOR PRODUCTION NO. 7:**   Please produce copies of all statements, speeches or quotes made to news organizations, newspapers, television stations, reporters, radio stations by Justice regarding GGD and George from January 2010 through the present.

**RESPONSE:** Mr. Justice has no documents responsive to this request in his possession, custody, or control. Mr. Justice reserves his right to amend and/or supplement his response to this request.

**REQUEST FOR PRODUCTION NO. 8:**   Please produce copies of any expert report, including drafts, created by any individual identified in response to Interrogatory No. 1.

**RESPONSE:** Mr. Justice objects to this interrogatory on the basis that discovery is ongoing.  Mr. Justice will abide by the Court's Scheduling Order and any other orders of the Court concerning disclosure of expert reports. Mr. Justice reserves his right to amend and/or supplement his response to this request.

**REQUEST FOR PRODUCTION NO. 9:**   For each individual identified in Justice's response to Interrogatory No. 2, please provide a copy of the expert's fee schedule, resume, curriculum vitae and all invoices for services rendered in relation to the above styled action.

**RESPONSE:** Mr. Justice refers plaintiffs to his response to request to Request No. 8, above. Mr. Justice reserves his right to amend and/or supplement his response to this request.

**REQUEST FOR PRODUCTION NO. 10:** Please provide copies of all documentation necessary to establish Justice's net worth. The requested documentation should include, but is not limited to tax returns; bank statements; a listing of assets and liabilities; financial statements; and balance sheets (including footnote disclosures).

**RESPONSE:** Mr. Justice objects to this Interrogatory on the basis that Plaintiffs' request for information related to net worth at this stage in this proceeding is entirely premature. Plaintiffs' claims for punitive damages are, at best, speculative, and contingent upon a finding of liability -- a finding that Mr. Justice vigorously contests. *See LaPlaca v. Odeh*, 428 S.E.2d 322, 324 (W.Va. 1993) ("[A] finding of compensatory damages by a jury is an indispensable predicate to a finding of exemplary or punitive damages"). To ask Mr. Justice to provide this information, which contains personal and sensitive business information, is unnecessary, and waiting until after dispositive motions have been filed regarding liability on Plaintiffs' claims for punitive damages will not prejudice Plaintiffs. Mr. Justice should be required to present evidence of his net worth *only* if the Court finds that Plaintiffs have presented sufficient evidence to seek punitive damages from the jury. Moreover, Mr. Justice further objects on the basis that Plaintiffs seek far more documents and other information than what would adequately demonstrate net worth for the purposes of punitive damages, and much of the requested information does not actually show net worth. *See, e.g., In re House of Yahweh*, 266 S.W.3d 668, 673-74 (Tex. App. 2008) (improper for court to compel production of, *inter alia*, income tax returns, bank statements, asset lists, and evaluations of financial performance, as such documents

do not necessarily demonstrate net worth). Mr. Justice reserves his right to amend and/or supplement his response to this request.

**REQUEST FOR PRODUCTION NO. 11:** Please provide copies of all civil and criminal complaints filed against Justice in West Virginia state or federal court over the last five (5) years.

**RESPONSE:** Mr. Justice objects to this request on the basis that it is overly broad, unduly burdensome, seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence, and imposes obligations on Mr. Justice beyond those set forth in the Federal Rules of Civil Procedure 26 and 34. Subject to and without waiving these objections or the general objections, Mr. Justice responds as follows: no criminal complaints have been filed against Mr. Justice over the last five years. Mr. Justice reserves his right to amend and/or supplement his response to this request.

**REQUEST FOR PRODUCTION NO. 12:** Please provide copies of all civil and criminal complaints filed against Justice in state or federal court over the last five (5) years, which was not produced in response to a previous request.

**RESPONSE:** Mr. Justice refers plaintiffs to his response to Request No. 11, above. Mr. Justice reserves his right to amend and/or supplement his response to this request.

**REQUEST FOR PRODUCTION NO. 13:** Produce copies of documentation regarding and/or relating in any manner to changes made by Justice to the Tournament Operations Landscaping Conceptual (GGD000221) the field drawings done by GGD (GGD000163-181) and the June 1, 2010 plant list (GGD000188-189) for the Old White Golf Course made by the Greenbrier after GGD was terminated on July 7, 2010,

15

**RESPONSE:** Mr. Justice has no documents responsive to this request in his possession, custody, or control. To the extent that any such documents exist, they have previously been produced in the order in which they are maintained in the ordinary course of business by the Greenbrier. Mr. Justice reserves his right to amend and/or supplement his response to this request.

**REQUEST FOR PRODUCTION NO. 14:** Produce copies of all documents including, but not limited to, timesheets, work orders, journals, calendars, daily logs, equipment rentals, invoices, bills, expenditures, demonstrating the flowers planted on the Old White Golf Course after July 7, 2010.

**RESPONSE:** Mr. Justice refers plaintiffs to his response to Request No. 13, above. Mr. Justice reserves his right to amend and/or supplement his response to this request.

**REQUEST FOR PRODUCTION NO. 15:** Produce copies of all timesheets, journals, calendars, daily logs, equipment invoices, bills, expenditures, phone logs, emails, letters and/or any other documents demonstrating flowers ordered for the Old White Golf Course after July 7, 2010.

**RESPONSE:** Mr. Justice refers plaintiffs to his response to Request No. 13, above. Mr. Justice reserves his right to amend and/or supplement his response to this request.

**REQUEST FOR PRODUCTION NO. 16:** Please produce copies of any and all documents provided to and/or generated by Justice's testifying exports, which have not been produced in response to a previous request,

**RESPONSE:** Mr. Justice refers plaintiffs to his response to Request No. 8. Mr. Justice reserves his right to amend and/or supplement his response to this request.

**REQUEST FOR PRODUCTION NO. 17:** Please produce copies of all notes, memoranda and recordings discussing or addressing in any manner GGD's or George's work from January of 2010 through the present on the Old White Golf Course, which was not produced in response to a previous request.

**RESPONSE:** All documents responsive to this request in Mr. Justice's possession, custody, or control have previously been produced to plaintiffs through the Greenbrier's document production as those documents were maintained in the ordinary course of business. Mr. Justice reserves his right to amend and/or supplement his response to this request.

**REQUEST FOR PRODUCTION NO. 18:** Please provide copies of any and all documents and tangible things whose production has not been requested pursuant to any previous request, which Justice intends to offer as evidence at trial or which may be used as demonstrative evidence at trial.

**RESPONSE:** Mr. Justice objects to this request on the basis that it requests information protected by the attorney-client privilege and/or work product doctrine. Subject to and without waiving this objection or the general objections, Mr. Justice responds as follows: Mr. Justice will provide an exhibit list pursuant to the Court's Scheduling Order and any other orders of the Court. Mr. Justice reserves his right to amend and/or supplement his response to this request.

**REQUEST FOR PRODUCTION NO. 19:** Please produce any and all notes, minutes and other documents generated during the conversations, discussions or meetings identified in response to Interrogatory Nos. 3, 4 and/or 12,

**RESPONSE:** Mr. Justice refers plaintiffs to his response to Request No. 17, above. Mr. Justice reserves his right to amend and/or supplement his response to this request.

17

**REQUEST FOR PRODUCTION NO. 20:** Produce copies of all public statements, speeches and/or comments made by Justice regarding the financial condition of the Greenbrier, Justice's finances and/or net worth, and the landscaping and renovation done at the Old White Golf Course, which have not been produced in response to another request.

**RESPONSE:** Mr. Justice objects to this request on the basis that it is overly broad, unduly burdensome, duplicative, imposes obligations on him beyond those set forth in the Federal Rules of Civil Procedure 26 and 34, and seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections or the general objections, Mr. Justice responds as follows: Mr. Justice, in his personal capacity, has no documents in his possession, custody, or control responsive to this request. Mr. Justice reserves his right to amend and/or supplement his response to this request.

Respectfully submitted,

Barry D. Hunter
F. William Hardt III
Frost Brown Todd LLC
250 West Main Street, Suite 2800
Lexington, KY 40507-1749
bhunter@fbtlaw.com
bhardt@fbtlaw.com
Phone: (859) 231-0000
Facsimile: (859) 231-0011

Jared M. Tully, Esq.
WV State Bar No.: 9444
Frost Brown Todd LLC
500 Lee Street East
Laidley Tower, Suite 401
Charleston, WV 25301-3207
Phone: (304) 345-0111
Facsimile: (304) 345-0115

AND

John D. (Jody) Wooton, Jr.
WV State Bar No.: 10571
The Wooton Law Firm
Post Office Box 2600
Beckley, WV 25802-2600
Phone: (304) 255-2188

*Counsel for Defendants, Greenbrier Hotel*
*Corporation, James C. Justice II, and*
*James C. Justice Companies, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BECKLEY

**ELECTRONICALLY FILED**

GEORGE GOLF DESIGN, INC.,
and LESTER L. GEORGE,

       Plaintiffs,

v.

       Case No. 5:10-cv-01240
       (Irene C. Burger, Judge)

GREENBRIER HOTEL CORPORATION,
JAMES C. JUSTICE COMPANIES, INC., and
JAMES C. JUSTICE, II,

       Defendants.

### CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the *James Justice II's Responses to Plaintiffs' First Set of Interrogatories and Requests for Production* was served and the Certificate of Service has been electronically filed on this the 13th day of April, 2012, with the Clerk of the Court by using the CM/ECF system.  Parties may access this filing through the Court's electronic filing system.

       /s/ F. William Hardt III
       F. William Hardt III

LEXLibrary 0117696.0587687  505534v1



The
TINNEY
LAW FIRM
PLLC

May 9, 2012

*Via E-mail and U.S. Mail: bhardt@fbtlaw.com*

F. William Hardt, II, Esquire
Frost Brown Todd, LCC
250 West Main Street
Suite 2800
Lexington, KY 40507

Re:   George Golf Design, Inc. et al., v. Greenbrier Hotel Corporation,
Case No. 5:1-cv-01240

Dear Bill:

On February 24, 2012, George Golf Design, Inc. (hereinafter "GGD") served "Plaintiffs' First Set of Interrogatories and Requests for Production of Documents to James C. Justice, II" (hereinafter "Discovery Requests"). James C. Justice, II (hereinafter "Justice"), on April 13, 2012, filed "James C. Justice, II's Answers to Plaintiff's First Set of Interrogatories and Requests for Production of Documents." Upon review of Justice's responses, Plaintiffs have found some deficiencies that require supplementation and/or clarification.

### Interrogatories

Interrogatory No. 5 provides:

> Please identify each and every change requested by Justice to the landscaping and renovation plan authored by George and GGD and approved by the Greenbrier for the Old White Golf Course from May of 2010 through July 6, 2010 by providing:  the specific change requested; the date it was requested; why the change was requested; the location of the change; whether plants had to be removed to implement the change; the specific plants selected; who selected the replacement plants; why new plants were selected; the plants replaced; the additional cost incurred by the change; and how long Aspen had to implement the change.

Interrogatory No. 6 provides:

> Please identify all changes to the Tournament Operations Landscaping Conceptual (GGD000221) the field drawings done by GGD (GGD000163-181) and the June 1, 20110 plant list



EXHIBIT
*B*

F. William Hardt, II, Esquire
May 9, 2012
Page 2



> (GGD000188-189) made by the Greenbrier on the Old White Golf
> Course after GGD was terminated on July 7, 2010 by providing:
> the date of the change; who made the change; who oversaw
> implementation of the change; when the change was completed;
> how the change altered the original design of GGD; and the cost of
> the change.

Interrogatory No. 7 provides:

> Please identify the number of flowers planted on the Old White
> Golf Course after GGD was terminated on July 7, 2010 by
> providing:  the date the flowers were planted; the number planted
> on each date; the type of flower planted; where the flowers were
> planted; who planted the flowers; and who oversaw the planting of
> the flowers.

Interrogatory No. 8 provides:

> Please identify the number of flowers ordered for the Old White
> Golf Course after GGD was terminated on July 7, 2010 by
> providing:  the date the flowers were ordered; from what vendor
> the flowers were ordered; who ordered the flowers; the type of
> flowers ordered; the date the flowers arrived; and who inspected
> the flowers.

In response to Interrogatory Nos. 6-8, Justice stated, "Mr. Justice, in his individual capacity, does not have the information necessary to answer this interrogatory in his possession, custody, or control.  Mr. Justice reserves the right to amend and/or supplement his answer to this interrogatory."

Justice's answers to Interrogatory Nos. 6-8 are wholly insufficient.  Justice does not answer the interrogatories, does not assert a valid objection and does not assert that he has no information responsive to the interrogatories.  Instead, Justice attempts to circumvent his discovery obligations under the Federal Rules of Civil Procedure by asserting he has no responsive information in his "individual capacity."  The capacity in which Justice has the information is irrelevant.  The fact that he has responsive information is all that is required.  As Justice has testified that he was in charge of the landscaping on the Old White Golf Course after July 7, 2010, then it is clear that he should have information responsive to these interrogatories.  As the information sought by Plaintiffs is relevant and no valid objection has been asserted, Justice is required to fully and completely respond to the interrogatories to which he has responsive information – in whatever capacity he has the information.

Interrogatory No. 9 provides, "Please state your financial position by providing your net worth for the last five years."  In response to Interrogatory No. 9, Justice objected asserting that

F. William Hardt, II, Esquire
May 9, 2012
Page 3



the interrogatory is premature, seeks confidential information and seeks more than is necessary to determine net worth. Justice's objections lack merit.

First, The Supreme Court of Appeals of West Virginia specifically held that financial information regarding a defendant is relevant and discoverable when a party asserts a claim for which punitive damages are available. State ex rel. Arrow Concrete Co. v. Hill, 460 S.E. 2d 54 (W.Va. 1995); TXO Production Corp. v. Alliance Resources Corp., 419 S.E.2d 870 (W.Va. 1992). Plaintiffs have asserted a claim for defamation and West Virginia law does provide that a plaintiff may seek and obtain punitive damages as part of their damages for a claim of defamation. As Plaintiffs have a claim for which punitive damages are available, Plaintiffs are entitled to the financial information sought by Interrogatory No. 9.

Further, Interrogatory No. 9 is not premature. As you well know, the parties agreed that discovery will close on June 30, 2012. This discovery must be completed in short order. As such, the discovery is not premature.

If Justice suggests that the discovery should be completed, a trial conducted, a verdict rendered and, then Plaintiffs conducted discovery regarding Justice's financial condition, Justice's position is unworkable. It is inefficient and will waste the Court's valuable time. Moreover, it finds no support in West Virginia law.

Additionally, Justice's concern regarding the personal and business sensitive information sought should be elevated by the protective order already entered in this case. Justice need only designate his response confidential and comes under the protection of the order.

Finally, the Interrogatory does not seek more document than necessary to determine Justice's financial position because the Interrogatory simply asks for Justice's financial position. It is limited specifically to what the West Virginia Supreme Court has stated a plaintiff is entitled to when making a claim for which punitive damages are available.

### Requests for Production

To the extent that Justice responded to any request for production by stating, "All documents responsive to this request in Mr. Justice's possession, custody, or control have previously been produced through the Greenbrier's document production as those documents are maintained in the ordinary course of business" or similar language, the responses are insufficient. Pursuant to the Court's December 6, 2011 Order, the Greenbrier was directed to make its responses to requests for production request specific. See, December 6, 2011 Order at 10. The Court rejected the Greenbrier's assertion that it could respond by asserting documents were produced in the ordinary course of business. As that argument was rejected by the Court as it relates to the Greenbrier, it will be rejected for Justice. Moreover, if the Greenbrier complied with the Court's Order, then Justice should have little difficulty identifying documents responsive to Plaintiffs' individual document requests.

Request for Production No. 10 states, "Please provide copies of all documentation necessary to establish Justice's net worth. The requested documentation should include, but is

F. William Hardt, II, Esquire
May 9, 2012
Page 4



not limited to tax returns; bank statements; a listing of assets and liabilities; financial statements; and balance sheets (including footnote disclosures)." In response thereto, Justice asserted the same objection he asserted in response to Interrogatory No. 9. For the reasons that set forth in discussing Justice's response to Interrogatory No. 9, Justice's response to Request for Production No. 10 is insufficient and must be supplement.

Request for Production No. 11 states, "Please provide copies of all civil and criminal complaints filed against Justice in West Virginia state or federal court over the last five years." In response thereto, Justice objected and asserted that the request is overly broad, unduly burdensome and seeks irrelevant information.

Justice's objections have no merit. The request was specifically limited to avoid the very objections asserted by Justice. It was limited to five years when most court permit one to obtain discovery for a ten year period. It is limited geographically because it only seeks complaints filed in West Virginia. Moreover, counsel have already had this debate in the matter of *Aspen Corporation v. Greenbrier Hotel Corporation, et al.* and agreed that complaints filed in West Virginia for a period of five was acceptable and the information would be produced. The parties should not have to go through this discussion once more.

Plaintiffs respectfully request that Justice rectify the deficiencies herein noted in his discovery responses and provide supplemental responses by May 11, 2012. Please note this letter constitutes Plaintiffs' good faith attempt to confer with Justice and reach an amicable resolution as to these discovery issues.

If Justice fails to produce compliant discovery responses by the herein provided deadline, Plaintiffs will seek the Court's intervention. If you need additional time to supplement, please advise. Plaintiffs will provide Justice additional time to supplement upon an agreement that Plaintiffs' can file their motion to compel after the deadline required by the Court. If additional time is necessary, advise by May 11, 2012.

Thank you for your prompt attention to this matter. Please call with questions or concerns.

Sincerely yours,

John H. Tinney

John H. Tinney

JHT/jof/439