**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

GEORGE GOLF DESIGN, INC.
and LESTER L. GEORGE,

        Plaintiff,

v.                              CIVIL ACTION NO.  5:10-cv-01240

GREENBRIER HOTEL CORPORATION, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Plaintiff George Golf Design, Inc.'s Motion for Summary Judgment Against Defendant James C. Justice Companies, Inc. for Breach of Book Contract* (Document 118) and *Plaintiff George Golf Design, Inc.'s Amended Motion for Summary Judgment Against Defendant James C. Justice Companies, Inc. for Breach of Book Contract* (Document 134). The arguments made in Plaintiff's original and amended motions are substantively the same. However, Plaintiff attaches an exhibit, cited in the original motion, which was apparently mistakenly not attached to the original motion as cited. For simplicity, the Court cites to the original motion in this opinion. After consideration of Plaintiff's motions, memoranda in support thereof and in opposition thereto, attached exhibits and the entire record, the Court, for the reasons stated herein, denies the Plaintiff's motion and amended motion for summary judgment on the breach of book contract claim.

*I.*

Plaintiff George Golf Design, Inc ("GGD") moves for summary judgment on its breach of book contract claim against Defendant James C. Justice Companies, Inc. ("JCJC"). Plaintiff alleges that GGD and JCJC entered into a contract for GGD to author a book about the history of the Old White Golf Course in April of 2010. (Am. Compl. ¶ 55.) Plaintiff alleges GGD performed all aspects of the book contract in accordance with the terms agreed upon by the parties, and JCJC subsequently breached the book contract by failing to pay GGD the money owed to it under the alleged contract. (Am. Compl. ¶¶ 56-57.)

*II. STANDARD OF REVIEW*

The well established standard for consideration of a motion for summary judgment is that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986). A "material fact" is a fact that might affect the outcome of a party's case. *See Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Id*. The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the

2

non-moving party. *North American Precast, Inc. v. General Cas. Co. of Wis.*, Civil No.02:04-1306, 2008 WL 906334, *3 (4th Cir. Mar. 31, 2008). The non-moving party must satisfy its burden of proof by offering more than a mere "scintilla of evidence" in support of their position. *Anderson*, 477 U.S. at 252. If the non-moving party fails to make a showing sufficient to establish the existence of an essential element, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. If factual issues exist that can only be resolved by a trier of fact because the issues may reasonably be resolved in favor of either party, summary judgment is inappropriate. *Anderson*, 477 U.S. at 250.

### *III. DISCUSSION*

In support of its motion, GGD argues no genuine issues of material fact exist with respect to JCJC's breach of the book contract because the "parties came to a meeting of the minds and agreed on concrete terms for composition and publishing of a book on the history of the Old White Golf Course." (Document 18 at 1.) Plaintiff also argues JCJC failed to abide by the terms of the agreement. (*Id*.) GGD contends Lester George ("George") of GGD and Jim Justice ("Justice") of JCJC entered into discussions about the writing and publication of a book of the Old White Golf Course sometime prior to April 2010. (*Id*. at 2.) George, a golf course architect, had recently completed a restoration of the Old White Golf Course. In April 2010, George and Justice met in person to discuss the terms of the purported book deal. (*Id*.) During the meeting, George presented Justice a basic spreadsheet with the anticipated expenses and revenues for the book, which included what he expected to be paid for his work. Initially, the spreadsheet indicated George would be paid a total of $120,000 as the author. However, George argues he lowered his

3

fee to $80,000 at the request of Justice, and the parties selected certain individuals for roles as editor and artist. (*Id*.) George argues he then sent a final spreadsheet to Justice and began working on the book. JCJC initially made payments consistent with the amount and timing contained in the final spreadsheet. George contends Justice personally approved the initial outline of the book. However, George argues Justice abruptly terminated GGD from a separate contract to provide golf architectural service for the Greenbrier Hotel Corporation's ("Greenbrier") Old White Golf Course on July 7, 2010. (*Id*.) At this point, George contends he had received only $20,000 of the $80,000 to GGD under the book contract. (*Id*.) Nevertheless, George contends he continued to work on the book even though he received no further payments. (*Id*.) Plaintiff argues the parties had a "meeting of the minds" with respect to the book and he commenced performance pursuant to the parties' mutual understanding.

Plaintiff contends issues of contract formation and breach thereof are properly considered on summary judgment. (Document 118 at 3-4.) Plaintiff argues JCJC and GGD never executed a single written contract, but the book contract was formed through a number of meetings and exchanged documents which unequivocally indicate that a "meeting of the minds" took place. (Document 118 at 5.) In support, Plaintiff cites emails prior to the April 8, 2010 meeting which indicate the parties had discussed the book contract. (*Id*.) Attached to one email was a document titled "Final Old White Book Spreadsheet April 10.xls." (*Id*.) In the spreadsheet, George is designated as the "Author," while Jeffery Silverman is designated as the "Editor." (Id. at 6.) Meanwhile, the spreadsheet indicated Linda Hartough would be the "Artist" for the book. The spreadsheet was later altered by handwritten notes reducing George's fee from $120,000.00 to $80,000.00. (*Id*.) The following day, JCJC issued a check to George in the amount of $20,000.00 and a check to Silverman for $15,000.00, which was consistent with the terms in the spreadsheet.

4

Subsequently, the Greenbrier paid Silverman's travel expenses associated with the purported book deal in an amount of $1,260.00. Additionally, the Greenbrier paid Silverman an additional $5,000.00 for his work in September of 2010. In sum, Plaintiff argues these communications indicate the parties had come to terms on the book deal particularly because Justice signed off on the book outline and paid the aforementioned expenses associated with the book. Plaintiff argues JCJC clearly failed to perform its remaining obligations under the contract.

In response, Defendants argue that prior to the April 8, 2012 meeting, Justice and George had discussed the possibility of a book about the Old White Golf Course. Also prior to the meeting, Justice requested that George provide him with a proposed budget for the book. (Document 130 at 2.) Upon receipt of the spreadsheet, Justice indicated to George that the costs were too high. (*Id.*) Justice then indicated the revised budget looked good and he wished to further look into the idea of a book, but first needed a better understanding of the direction the book would take. (*Id.*) Accordingly, during the April 8, 2010 meeting, Justice contends he told George that he wanted to see a proposed detailed outline prior to committing to going forward with the book. (*Id.*) Thus, Justice contends he agreed to pay George $20,000.00 and Silverman $15,000.00 to complete the necessary research before deciding to go forward with the book. Justice also indicates he had JCJC issue these checks because of a transition taking place in the Greenbrier's accounting department. (*Id.*) Defendants contend this was JCJC's only involvement with the book, and the agreement with respect to the outline of the possible book was between George and the Greenbrier. (*Id.* at 3.)

Defendants contend that during the spring and summer of 2010, Justice informed George that he was going in the right direction with the outline, but that Justice never indicated "that he was authorizing him to go ahead with anything beyond this preliminary outlining, and certainly,

5

never indicated to Mr. George that he should go ahead with writing and publishing the book." (*Id.*) However, around July 6, 2010, Justice became frustrated with George's work on the landscaping project and decided he did not wish to do any further business with George, including the book idea. (*Id.*) Justice contends George was still working on the preliminary research for the book at this point and he had been fully paid for such work. (*Id.*)

Defendants argue summary judgment is improper because there are genuine issues of material fact with respect to whether there was a meeting of the minds both as to who would be the parties to the purported book contract and as to what the basic terms of the purported book contract would be. (Document 130 at 6-9.) Defendants argue "George has not and cannot proffer any evidence showing that JCJC was an intended party to the purported book contract beyond the fact that checks to pay Mr. George and Mr. Silverman were cut by JCJC." (*Id.* at 6.) Justice argues the Greenbrier, rather than JCJC, was the intended party of the contract. With respect to the terms of the purported book contract, Defendants argue a genuine issue of material fact exists because Plaintiff, George, asserts that Justice assented to "going forward with the writing, editing, art work, publishing, sales, and every other nuance innate to a book contract." (*Id.* at 7.) Meanwhile, Justice "has testified through the attached affidavit that he never assented to the writing, editing, art work, publishing, sales, and every other nuance innate to a book contract." (*Id.* at 8.) Defendants contend the parties "only agreed on this initial research and drafting a preliminary, detailed outline of the book, so that he could better understand what direction the book would take before assenting to a full-fledged book deal." (*Id.*)

In reply, Plaintiff argues the documentary evidence produced in discovery conclusively establishes that JCJC and GGD entered a contract to write the book. Plaintiff contends it is clear that JCJC agreed to pay the sums of money due to GGD for drafting and ultimately publishing the

book. Plaintiff contends this Court should disregard Justice's self-serving affidavit presenting an alternative version of the facts put forth by Plaintiff. (Document 138 3-4.) (Citing *Nat'l Enterprises, Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000)). This argument is without merit because Justice's version of what transpired before, during, and after the April 8, 2010 meeting is important in determining whether the parties mutually assented to the writing and publishing of the envisioned book. Unlike *Nat'l Enterprises,* where an affidavit addressed a non-moving party's description of obligations under a repurchasing agreement, here, Justice's affidavit describes in great detail his understanding and intention with respect to the purported book deal. The issue is not one of interpretation of an agreement, but rather an issue of whether a contract was formed. In fact, the intent of these parties is the very factual issue that must be resolved to determine if the parties had a meeting of the minds such that a contract was formed. Plaintiff asserts Justice's argument, that the parties only agreed to do preliminary work on the book, is unsupported by the record evidence and no reasonable jury could conclude JCJC's version of events is accurate. (*Id*. at 7.) Finally, Plaintiff argues JCJC complied with the schedule of fees in the spreadsheet prior to terminating GGD from the book contract. (*Id*. at 8.)

"It is well-established under contract law in West Virginia that no legal contract exists if the minds of the parties are not in agreement with the essential elements or 'contract fundamentals . . . [which include] competent parties, legal subject matter, valuable consideration and mutual assent.'" *Saylor v. Wilkes*, 613 S.E.2d 914, 924-25 (W. Va. 2005) (citations omitted). "A meeting of the minds of the parties is a *sine qua non* of all contracts." *Triad Energy Corp. of West Virginia, Inc. v. Renner*, 600 S.E.2d 285, 288 (W. Va. 2004) (citations omitted). "The contractual concept of 'meeting of the minds' or 'mutual assent' relates to the parties having the same understanding of the terms of the agreement reached." *Messer v. Huntington Anesthesia Group, Inc.*, 664 S.E.2d

7

751, 759 (W. Va. 2008) (citations omitted). Issues about contract formation as a "result of words and conduct over a period of time are quintessentially disputes about 'states of mind,' since they involve not only the subjective intentions had by the several parties but what 'states of mind,' what understandings, their manifestations of intention may have induced in others." *Charbonnages de France v. Smith*, 597 F.2d 406, 414-15 (4th Cir. 1979). Thus, "[t]hese subjective states [of mind] and objective manifestations of intention present interpretive issues traditionally understood to be for the trier of fact." *Id.* at 415.

Viewing the facts in the light most favorable to the non-moving party, the Court finds genuine issues of material fact exist that prevent summary judgment. Clearly, George and Justice have different argument and evidence as to what was and wasn't agreed to before, during, and after the April 8, 2010 meeting. Although the payments consistent with spreadsheet provides support for Plaintiff's position that a book contract was created, when viewing the parties' different understanding and unclear manifestations of intent before, during, and after the April 8, 2010 meeting, the Court finds that genuine issue of material fact exist as to whether the parties mutually assented to the writing and publication of a book on the history of the Old White Golf Course.[1] Accordingly, Plaintiff's is not entitled to summary judgment on the book contract claim.

### IV. CONCLUSION

WHEREFORE, based on the findings herein, the Court does hereby **ORDER** that *Plaintiff George Golf Design, Inc.'s Motion for Summary Judgment Against Defendant James C. Justice Companies, Inc. for Breach of Book Contract* (Document 118) and *Plaintiff George Golf Design,*

---

[1] The Court need not reach JCJC's argument with respect to which entities were parties to the purported book contract. Further, the Court does not consider JCJC's argument on damages because Plaintiff did not move for summary judgment on damages.

8

*Inc.'s Amended Motion for Summary Judgment Against Defendant James C. Justice Companies, Inc. for Breach of Book Contract* (Document 134) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: October 4, 2012

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA