IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

GEORGE GOLF DESIGN, INC.
and LESTER L. GEORGE,

                Plaintiffs,

v.                                    CIVIL ACTION NO.   5:10-cv-01240

GREENBRIER HOTEL CORPORATION, et al.,

                Defendants.

**MEMORANDUM OPINIONAND ORDER**

The Court has reviewed Plaintiff *George Golf Design, Inc.'s Motion for Summary Judgment Regarding Greenbrier Hotel Corporation's Counterclaims* (Document 115). After consideration of Plaintiff's motion, memoranda in support thereof and in opposition thereto, attached exhibits and the entire record, the Court, for the reasons stated herein, grants in part and denies in part the Plaintiff's motion.

*I.*

Plaintiff George Golf Design, Inc ("GGD") moves for summary judgment on Greenbrier Hotel Corporation's ("Greenbrier") counterclaims.  This case deals with several breach of contract, quantum meruit, and breach of the covenant of good faith and fair dealing claims concerning certain landscaping services that Plaintiffs GGD and Lester George ("George") performed for the Greenbrier in 2010 in preparation for the inaugural Greenbrier Classic PGA Tour event. (*See* Am. Compl. Counts I-IV, VI, VIII.)  Plaintiffs also allege claims against

Defendant James C. Justice Companies, Inc. ("JCJC") for breach of a book contract, quantum meruit and breach of the covenant of good faith and fair dealing with respect to a purported book about the history of the Greenbrier's Old White Golf Course. (*See* Am. Compl. Counts V, VII, IX.) Finally, Plaintiffs assert a defamation claim against Defendants Jim Justice and the Greenbrier. (*See* Am. Compl. Count X.)   In response, the Greenbrier asserts counterclaims against GGD for misrepresentation, fraudulent misrepresentation, unjust enrichment, and detrimental reliance. (*See* Countercl. Counts I-IV.)   GGD moves for summary judgment on all of the Greenbrier's counterclaims.

## *II. STANDARD OF REVIEW*

The well established standard for consideration of a motion for summary judgment is that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c)(2); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986).   A "material fact" is a fact that might affect the outcome of a party's case.   *See Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor.   *Id*.   The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.   *Celotex Corp.*, 477 U.S. at 322-23.   When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the non-moving party.   *North American Precast, Inc. v. General Cas. Co. of Wis.*, Civil

2

No.02:04-1306, 2008 WL 906334, *3 (4th Cir. Mar. 31, 2008).   The non-moving party must

satisfy its burden of proof by offering more than a mere "scintilla of evidence" in support of their

position.   *Anderson*, 477 U.S. at 252.   If the non-moving party fails to make a showing sufficient

to establish the existence of an essential element, "there can be 'no genuine issue as to any material

fact,' since a complete failure of proof concerning an essential element of the non-moving party's

case necessarily renders all other facts immaterial."   *Celotex*, 477 U.S. at 322-23.   If factual

issues exist that can only be resolved by a trier of fact because the issues may reasonably be

resolved in favor of either party, summary judgment is inappropriate.   *Anderson*, 477 U.S. at 250.

### *III. DISCUSSION*[1]

#### A.  *Misrepresentation and Fraudulent Misrepresentation Claims (Counts I and II)*

GGD moves for summary judgment on the Greenbrier's misrepresentation and fraudulent

misrepresentation claims on the following three grounds: (1) the Greenbrier failed to plead fraud

with particularity, (2) the Greenbrier's two misrepresentation claims are improperly based on

statements concerning a future occurrence, and (3) the Greenbrier failed to demonstrate that it

suffered any damages as a result of the allegedly false misrepresentations. (Document 116 at

3-15.)

The Court first addresses the issue of "future occurrence." Under West Virginia law,

"actionable fraud must ordinarily be predicated upon an intentional misrepresentation of a past or

existing fact and not upon a misrepresentation as to a future occurrence." *Croston v. Emax Oil Co.*,

195 W. Va. 86, 90 (1995)  In *Croston*, the West Virginia Supreme Court explained that fraud

"cannot be based on statements which are promissory in nature or which constitute expressions of

---

[1] To the extent the Greenbrier attempts to amend its Counterclaim to allege a negligence claim, it may not do so
through argument in a brief opposing summary judgment.

intention, unless the non-existence of the intention to fulfill the promise at the time it was made is shown." (*Id.*)   Thus, "[p]redictions as to future events, made in the honest belief that they will prove correct, cannot serve as the basis of fraud." (*Id.*) However, there is an exception to this general rule. "[M]isrepresentations regarding future events can serve as the basis for a fraud claim if they are not 'made in the honest belief that they will prove correct.'" *Federal Credit Ins. Corp. v. Bakkebo*, 506 F.3d 286, 297 (4th Cir. 2007) (applying West Virginia law and citing *Croston,* 195 W. Va. at 90). The "fraudulent promise" exception permits a claim where the device used to accomplish the fraud is the promise itself. *Traders Bank v. Dils*, 226 W. Va 691, 695 (2010). "Because a claim of fraudulent inducement requires a contemporaneous intent not to fulfill the subject promise, the 'should have known' language is clearly inapplicable." (*Id.*) at 694, n. 19. (citation omitted).

GGD argues the Greenbrier may not pursue misrepresentation claims based on its alleged future promise to complete the Colors Project by a certain date or the alleged promise to supply plant material of a certain size, quality, and color. (Document 116 at 9.)   GGD argues these alleged statements do not address a past or existing fact but a promise to act in the future, which is specifically not actionable under West Virginia law. (*Id.*)

In response, the Greenbrier argues that it maintains the two misrepresentation claims based on "GGD believing that its misrepresentations would not prove correct." (Document 131 at 11.) The Greenbrier contends it specifically alleged the following: "GGD knew or should have known said representations were misleading[ ]" (Countercl. ¶ 25); "GGD made such representations knowing them to be false, or made such representations with reckless indifference to the truth so as to be the equivalent of actual knowledge of false statements[ ]" (Countercl. ¶ 28); and "GGD made such representations for the purpose of defrauding the Greenbrier[.]" (Countercl. ¶ 29).

4

(Document 131 at 11.)

Additionally, the Greenbrier argues the evidence produced in discovery supports and creates a genuine issue of material fact with respect to the misrepresentation claims. (*Id*.) Specifically, the Greenbrier relies on GGD employee Glenn Muckley's testimony that the "employees affiliated with GGD and working on the Project had no formal education in horticulture." (*Id*.) (citing *Ex. C*, Muckley Depo., p. 18.)   Also, the Greenbrier points to evidence that GGD did not have experience performing "landscaping work independent of its golf course design work." (*Id*.) (citing *Ex. C*, Muckley Depo., p. 34.)   The Greenbrier further relies on evidence that "GGD had never done any landscaping or flower bed design work on as large a scale or with as tight a timeframe as the Project." (*Id*.) (citing *Ex. C*, Muckley Depo., p. 113.)   Because of this tight time frame, the Greenbrier contends "GGD did not even do formal specifications for the project, which would have informed [the subcontractor], among many other things, about soil testing, proper soil amendment, proper planting technique, and proper maintenance of the plant material." (*Id*. at 12) (citing Ex. C, Muckley Depo., p. 113.) Based on the aforementioned evidence, the Greenbrier argues it "has asserted actionable claims for misrepresentation and fraudulent misrepresentation," which precludes summary judgment on such claims. (*Id*.)

In reply, GGD argues the Greenbrier must prove that the alleged promise was made with no present intention of fulfilling it rather than GGD "should have known" its alleged promise was false. (Document 139 at 10.)   GGD argues the Greenbrier not only failed to plead a fraud claim, but now fails to put forth any evidence that anyone at GGD made any promises with no intention to fulfill the promises at the time the allegedly fraudulent promises were made. (*Id*. at 10-12.) GGD also contends the Greenbrier's reliance on the testimony of Muckley does not support its position. (Id. at 12.)   GGD argues Mr. Muckley clearly testified that GGD dealt with tight time frames

5

often, and that even though GGD had concerns with the time frame, "we knew that we were going to accomplish it." (*Id*. at 12.) (citing Muckley Depo., p. 153.)   Further, GGD argues it was never given the opportunity to fulfill its obligation because it was terminated prior to finishing the project.   With respect to the Greenbrier's argument about promises made with respect to size, color, and quality of the plants used for the Project, the Greenbrier put forth no evidence that GGD did not intend to fulfill the promises at the time such alleged promises were made. (*Id*. at 13.) Therefore, based on the abovementioned evidence, GGD argues that no genuine issue of material fact exists and it is entitled to summary judgment on the Greenbrier's misrepresentation and fraudulent misrepresentation claims. (*Id*. at 13-14.)

At the summary judgment stage, the Greenbrier must point to sufficient evidence to support the existence of a genuine issue of material fact that GGD made a promise with the contemporaneous intent not to fulfill the promise. The Greenbrier wholly fails to point to any evidence to support that GGD made a false promise about a future action with the contemporaneous intent not to fulfill the promised action.   In fact, the evidence relied on suggests the exact opposite. Although GGD, through Muckley, recognized the time frame would be challenging to meet, the only evidence of record also suggests GGD believed it was going to accomplish the task at hand within the given time frame. (*See* Muckley Depo., p. 153.) Thus, viewing the evidence in the light most favorable to the non-moving party, the Court finds the Greenbrier has failed to provide any evidence of an essential element of its misrepresentation and fraudulent misrepresentation claims.   Accordingly, GGD is entitled to summary judgment on the Greenbrier's Misrepresentation (Count I) and Fraudulent Misrepresentation (Count II) Claims.[2]

---

[2] Given the Court's rulings herein, the Court need not address GGD's particularity and damages arguments for summary judgment on the misrepresentation claims.

**B. *Unjust Enrichment Claim (Count III)***

GGD moves for summary judgment on the Greenbrier's unjust enrichment counterclaim on two grounds. First, GGD argues it had a legal right to retain any payment received for the services it provided to the Greenbrier. (Document 116 at 16.)   In support, GGD argues the Greenbrier has tendered a portion of what is owed to it for the "Colors Project," but still owes $26,000.00. (*Id*.)   Thus, GGD contends the Greenbrier cannot assert an unjust enrichment claim when it is entitled to keep the money already paid under the contract.   Second, GGD argues the Greenbrier may not bring an unjust enrichment clam because an expressed verbal contract existed between the parties. (*Id*. at 17.)

In response, the Greenbrier argues because the parties had a contract, its "unjust enrichment claim is merely a mislabeled breach of contract claim." (Document 131 at 14.)   The Greenbrier argues that "the entire purpose of the Greenbrier's unjust enrichment claim was to assert a cause of action to recover damages that the Greenbrier suffered from GGD not upholding its end of the bargain, or in the alternative, to recover damages in the amount of the monies paid to GGD for the services it negligently performed prior to the Greenbrier rescinding the contract." (*Id*. at 15-16.)   The Greenbrier argues it properly pled a breach of contract claim, but simply mislabeled the claim as an unjust enrichment claim. (*Id*. at 16.)   The Greenbrier also asks "to the extent that the Court determines that any defects exist in the Greenbrier's pleading, the Court should allow the Greenbrier leave to amend its pleading to fix any such defect so that principles of justice and fair play are ensured." (*Id*. at 14 n. 8.)

In reply, GGD argues that the Greenbrier concedes that it "failed to assert and/or create a genuine issue of material fact with regard to the unjust enrichment claim." (Document 139 at 16.) Instead, GGD argues the Greenbrier tries to avoid summary judgment under the guise of the liberal

pleading standard. (*Id.*)   GGD contends the Greenbrier wrongly asks this Court to allow it to amend its counterclaim without a showing of good cause, which GGD contends would severely prejudice it and be contrary to the controlling law. (*Id.*)

With respect to this counterclaim, GGD argues the Greenbrier failed to plead that a contract exists which is a key element of a breach of contract claim. (*Id.*)   Further, GGD argues the Greenbrier twice denied the existence of a contract in their answer to the claim. (*Id.* at 16-17.) (citing Ans.¶¶ 14, 43). GGD argues the Greenbrier improperly asks this Court to amend its counterclaim through a response to a motion for summary judgment. (*Id.* at 17.) (citing *Caudill v. CCBCC, Inc.*, 651 F. Supp. 2d 499, 510 (S.D. W.Va. 2009)).   Additionally, GGD contends that the Fourth Circuit clearly held that a plaintiff may not raise a new claim after discovery has begun without amending his complaint. (*Id.*) (citing *Wahi v. CAMC*, 562 F.3d 599, 617 (4th Cir. 2009)). To the extent the Court would consider an amendment at this stage, GGD argues the Greenbrier has not established good cause in support.

The Court finds the Greenbrier did not simply mislabel a breach of contract claim as an unjust enrichment claim.   All of the allegations in its counterclaim sound in unjust enrichment rather than breach of contract.   This is particularly clear because the Greenbrier, in its answer, denied that a contract existed.   At the summary judgment stage, the Greenbrier must point to sufficient evidence to support that GGD has been unjustly enriched and that no contract exists.   It is clear by the Greenbrier's concession that it is unable to do this.   Further, to the extent the Greenbrier seeks to amend its counterclaim to allege a breach of contract claim, it may not do so through argument in a brief opposing summary judgment. *Caudill* 651 F. Supp. 2d at 510. Therefore, the Court does not consider such request at this time.   Accordingly, GGD is entitled to summary judgment on the Greenbrier's Unjust Enrichment (Count III) claim.

### C. Detrimental Reliance Claim (Count IV)

GGD moves for summary judgment on the Greenbrier's detrimental reliance claim on two grounds. First, GGD argues detrimental reliance is an element of the Greenbrier's claim for fraudulent misrepresentation and, as such, cannot constitute a separate cause of action. (Document 116 at 17-18) (citing *Garvin v. Southern States Ins. Exchange Co.*, 329 F. Supp 2d. 756, 760-61 (N.D. W.Va. 2004)).   Second, GGD argues the Greenbrier has failed to demonstrate that it suffered any damages because of the alleged acts or omissions of GGD. (Document 116 at 18.)   In response, the Greenbrier argues GGD cites no case law to support its argument that a detrimental reliance claim cannot constitute a separate cause of action because no such case law exists. (Document 131 at 18.)   The Greenbrier relies on its previous arguments that it has, in fact, suffered damages as a result of its detrimental reliance.   (*Id*. at 18-19)

In reply, GGD argues it did, in fact, cite *Garvin* for the proposition that detrimental reliance cannot constitute a separate claim. (Document 139 at 20.)   Further, GGD contends that the Greenbrier has not cited any case to support its theory. (*Id*.)   Additionally, GGD argues that it has demonstrated no genuine issue of material fact with respect to this claim, and the Greenbrier failed to put forth any evidence that a detrimental reliance claim is viable. (*Id*.)   Lastly, GGD argues, in reply, that the Greenbrier has offered no evidence of damages as a consequence of the GGD's alleged actions. (*Id*.)

Detrimental reliance is clearly an element of fraudulent and negligent misrepresentation claims.[3]   Detrimental reliance is also an element of a promissory estoppel claim.[4]   However, the

---

[3] "The essential elements in an action for fraud are: '(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the

Court is aware of no case law that would support a "stand alone" or separate detrimental reliance claim.  GGD squarely argues the Greenbrier cannot pursue a separate detrimental reliance claim. The Greenbrier simply states that no case law exists to support GGD's argument. GGD, in fact, cited case law that supports its proposition.   Tellingly, the Greenbrier fails to cite any precedent that detrimental reliance is a separate and distinct claim.   Thus, the Court finds that the Greenbrier's detrimental reliance claim must be dismissed inasmuch as no precedent exists to support the same.[5]

Furthermore, to the extent the Greenbrier's "detrimental reliance" claim could be construed as a promissory estoppel claim, no such claim is viable in light of the Greenbrier's admission of the existence of a contract. *See* (Document 131 at 14) ("Because of the existence of a contract . . . [.]"); *CDC-LCGH, LLC v. Mayor,* 313 F. App'x 637, 641 (4th Cir. 2009) (promissory estoppel and unjust enrichment claims "are alternatives to [a] breach-of-contract claim because in Maryland, as elsewhere, '[t]he general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.'"); 4 Am. Jur. Proof of Facts 2d 641 (Originally published in 1975) ("A claim for promissory estoppel may not lie where a contract exists between the parties").

---

circumstances in relying upon it; and (3) that he was damaged because he relied upon it.'" Syl. Pt. 1, *Lengyel v. Lint,* 167 W. Va. 272 (1981)

[4] "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires." Syl. Pt. 3, *Everett v. Brown,* 174 W. Va. 35 (1984)

[5] Both GGD and the Greenbrier rely on their damages arguments made in support of and in opposition to summary judgment on the misrepresentation claims for their damages arguments on the detrimental reliance claim. However, given the Court's rulings herein, the Court need not address GGD's damages arguments for summary judgment on the detrimental reliance claim.

### IV.    CONCLUSION

WHEREFORE, based on the findings herein, the Court does hereby **ORDER** that *Plaintiff George Golf Design, Inc.'s Motion for Summary Judgment Regarding Greenbrier Hotel Corporation's Counterclaims* (Document 115) be **GRANTED**.   Accordingly, the Court **ORDERS** that the Greenbrier's Counterclaims be **DISMISSED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:      October 4, 2012

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

11