IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

GEORGE GOLF DESIGN, INC.
and LESTER L. GEORGE,

        Plaintiff,

v.                                      CIVIL ACTION NO.   5:10-cv-01240

GREENBRIER HOTEL CORPORATION, et al.,

        Defendants.

**MEMORANDUM OPINIONAND ORDER**

        The Court has reviewed the *Motion for Partial Summary Judgment by Defendants Greenbrier Hotel Corporation and James C. Justice, II* (Document 114) and *Plaintiffs' Motion for Partial Summary Judgment Regarding the Defamatory Per Se Comments of James C. Justice II* (Document 119).

        The parties filed their responses to the motions for summary judgment on June 4, 2012. On June 7, 2012, the parties filed their *Joint Motion for Extension to File Replies in Support of Motions for Summary Judgment* (Document 132), wherein the parties sought to extend the time by which the parties had to file a reply in support of their motions for summary judgment by one (1) week. The Court granted the parties' joint motion. (Document 133). With respect to the motions for summary judgment on Plaintiff's defamation claim, the parties' replies were due, as requested by the parties in their joint motion, no later than June 18, 2012. Plaintiffs failed to file a reply in support of their motion for summary judgment. On June 21, 2012, the Defendants untimely filed their *Reply in Support of Motion for Partial Summary Judgment by Defendants Greenbrier Hotel Corporation and James C. Justice, II* (Document 140). Although the Defendants' reply was only

three days late, the Court finds the untimeliness of the reply to be particularly egregious given that the Court granted the one week extension requested by the parties. Accordingly, the Court **ORDERS** that the *Reply in Support of Motion for Partial Summary Judgment by Defendants Greenbrier Hotel Corporation and James C. Justice, II*. (Document 140) be **STRICKEN** from the record as untimely.

On June 27, 2012, Plaintiffs filed their *Motion for Leave to File a Surreply in Further Opposition to Greenbrier Hotel Corporation's and James C. Justice, II's Motion for Partial Summary Judgment* (Document 141) and *Plaintiffs' Surreply in Further Opposition to Greenbrier Hotel Corporation's and James C. Justice, II's Motion for Partial Summary Judgment* (Document 142). On July 10, 2012, Defendants filed their *Response in Opposition to Plaintiffs' Motion for Leave to File Sur-Reply* (Document 151). Given that the Court struck Defendants' untimely reply, the Court **ORDERS** that *Plaintiffs' Motion for Leave to File a Surreply in Further Opposition to Greenbrier Hotel Corporation's and James C. Justice, II's* (Document 141) be **DENIED AS MOOT**. Consequently, the Court **ORDERS** that *Plaintiffs' Surreply in Further Opposition to Greenbrier Hotel Corporation's and James C. Justice, II's Motion for Partial Summary Judgment* (Document 142) and *Defendants' Response in Opposition to Plaintiffs' Motion for Leave to File Sur-Reply* (Document 151) be **STRICKEN** from the record.

After careful consideration of the parties' motions, *timely* memoranda in support thereof and in opposition thereto, attached exhibits and the entire record, the Court, for the reasons stated herein, denies both motions.

## I.   FACTS

This case deals with several breach of contract, quantum meruit, and breach of the covenant of good faith and fair dealing claims concerning certain landscaping services that

Plaintiffs George Golf Design, Inc ("GGD") and Lester George ("George") performed for Defendant Greenbrier Hotel Corporation ("Greenbrier") in 2010 in preparation for the inaugural Greenbrier Classic PGA Tour event. (*See* Am. Compl. Counts I-IV, VI, VIII.) Plaintiffs allege claims against Defendant James C. Justice Companies, Inc. ("JCJC") for breach of a book contract, quantum meruit, and breach of the covenant of good faith and fair dealing with respect to the purported book about the history of the Greenbrier's Old White Golf Course. (*See* Am. Compl. Counts V, VII, IX.) Finally, Plaintiffs assert a defamation claim against Defendants James C. Justice II ("Justice") and the Greenbrier. (*See* Am. Compl. Count X.)

Plaintiffs move for partial summary judgment on their defamation claim (Count X). Plaintiffs argue that Defendant Justice's statements about Plaintiffs are capable of a defamatory meaning, were defamatory per se, non-privileged and negligently published to a third party, and that, therefore, damage is presumed. (Document 119 at 1.) Defendants argue they are entitled to judgment as a matter of law on Plaintiffs' defamation claim on the following three grounds: "(1) all of Mr. Justice's statements, which were made in direct response to inquiries from the media concerning allegations brought to them by GGD, were privileged under West Virginia law; (2) most – if not all – of Mr. Justice's statements are constitutionally-protected opinions, and (3) the statements at issue were substantially true." (Document 117 at 2.)

This opinion addresses only the defamation claim. Plaintiffs allege that "[o]n October 22, 25, 26, and 27 of 2010, Justice on behalf of himself and the Greenbrier shamefully made several malicious, spurious, unfounded false statements regarding George and GGD." (Am. Compl. ¶ 84.) Plaintiffs allege that the statements were in reference to the type, quality, and timeliness of work performed by Plaintiffs at the Greenbrier. (*Id*.) Plaintiffs allege that Defendant made the statements to the following newspapers and publications: "(1) an October 22, 2010 article in

3

Golfweekly; (2) an October 22, 2010 article in the Beckley Register-Herald; (3) an October 22, 2010 article in the Charleston Daily Mail; (4) an October 25, 2010 article in the Charleston Gazette; (5) an October 26, 2010 article in the Charleston Daily Mail; (6) an October 26, 2010 article in the Beckley Register-Herald; and (7) an October 27, 2010 article in the West Virginia Record." (Am. Compl. ¶ 86.) Plaintiffs allege the statements were not privileged and designed to harm George and GGD's personal, professional and business reputation. (Am. Compl. ¶¶ 87-89.)

Plaintiffs' defamation claim is based on the following statements:

1. "There were very, very sub-par performance issues . . . Aspen and Lester George were in charge of flower beds in various areas, and it was not getting done, and the work was sub-par, it was off the chart." (Document 119 Ex. D.)

2. "Then Lester George decided he would head up getting that done because our grounds crews could not get all of that done before the tournament. And then really what happened was extreme sub-par work. And it wasn't getting done, and it never would have gotten done. Now you're faced with the tournament coming, and the work being done is extremely sub-par by Lester George as well as Aspen. . . . This has been a collage of extremely inept work. . . . this is not a matter of the Greenbrier hasn't paid these people. It is a matter that the work was done in such a horrible fashion and then we had to do the work and now we've expected them to reasonable bill us for sub-par work and warrant what they should be warranting." (Document 119 Ex. E.)

3. "Justice said the companies put a material on the golf course's flowerbeds that made the soil toxic." (Document 119 Ex. F.)

4. "It's a matter that work [was] done in such a horrible fashion." Document 119 Ex. G.)

5. "[t]he material they had already put down in the flowerbeds was at a pH level toxic to plants. So basically all of our out plantings died and we had to re-do them all." (Document 119 Ex. E.)

6. "There was extreme over-charging – ridiculous over-charging." (Document 119 Ex. D.)

## II. STANDARD OF REVIEW

The well established standard for consideration of a motion for summary judgment is that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986). A "material fact" is a fact that might affect the outcome of a party's case. *See Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Id*. The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the non-moving party. *North American Precast, Inc. v. General Cas. Co. of Wis.*, Civil No.02:04-1306, 2008 WL 906334, *3 (4th Cir. Mar. 31, 2008). The non-moving party must satisfy its burden of proof by offering more than a mere "scintilla of evidence" in support of their position. *Anderson*, 477 U.S. at 252. If the non-moving party fails to make a showing sufficient to establish the existence of an essential element, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. If factual issues exist that can only be resolved by a trier of fact because the issues may reasonably be resolved in favor of either party, summary judgment is inappropriate. *Anderson*, 477 U.S. at 250.

### *III.*     *APPLICABLE LAW*

Defamation requires evidence of six elements: "(1) defamatory statements; (2) a non-privileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." *Crump v. Beckley Newspapers*, 173 W. Va. 699, 706 (1984). "In determining whether a particular defendant is liable to a private individual for defamation, in the absence of a privileged communication, the standard is one of negligence, and the conduct of the defendant is to be measured against what a reasonably prudent person would have done under the same or similar circumstances" *Id.* "A statement may be described as defamatory 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Id.* (citing Restatement (Second) of Torts § 559 (1977)).

"A court must decide initially whether as a matter of law the challenged statements in a defamation action are capable of a defamatory meaning." Syl. pt. 6, *Long v. Egnor,* 176 W.Va. 628 (1986). Under West Virginia law, "[d]efamation may be accomplished through inference, implication, innuendo or insinuation, as well as through direct reference." Syl. pt. 4, *Crump,* 173 W. Va. 699. "West Virginia has long recognized that statements may be defamatory *per se* if they 'impute[ ] to an officer improper conduct in his office or incompetence to discharge the duties thereof properly, or charge[ ] a person with incapacity in his trade or profession [.]'" *Workman v. Kroger Ltd. P'ship I*, 2007 WL 2984698 *5 (S.D. W. Va. Oct. 11, 2007) (citing Syl. pt. 4, *Hancock v. Mitchell,* 83 W. Va. 156 (1919); *Kinney v. Daniels,* 574 F.Supp. 542, 546 n. 23 (S.D. W.Va. 1983) (applying *Hancock* to a defamation case brought by a doctor in his professional capacity)). Here, because the alleged defamatory statements concern GGD's profession, Plaintiffs'

6

defamation claim is for defamation *per se*.

### *IV. DISCUSSION*

#### *A. Defendants' Motion for Partial Summary Judgment*

##### *1. Qualified Privilege*

A defamation defendant can, as here, raise the privilege defense. There are two types of privilege defenses available to defamation defendants: absolute and qualified. "A qualified privilege exists when a person publishes a statement in good faith about a subject in which he has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest in the subject matter." *Swearingen v. Parkersburg Sentinel Co.,* 125 W.Va. 731, 744 (1943). Qualified privileges are "based on a public policy that it is essential that true information be given whenever it is reasonably necessary for the protection of one's own interests, the interests of third persons or certain interests of the public." *Crump,* 173 W. Va. at 707. However, motive is irrelevant to an absolute privilege defense. "A bad motive will defeat a qualified privilege defense." *Id*. "The primary manner in which a qualified privilege to publish defamatory statements may be defeated is by a showing of actual malice." *Id*. However, a qualified privilege may also be defeated by a showing of (1) an intentional publication of false defamatory material; (2) a publication of false defamatory material in reckless disregard for its truth or falsity; (3) a publication of false defamatory material made to persons who have no reason to receive the information; and (4) a publication of false defamatory material with a primary purpose unrelated to the purpose of the privilege. (*Id*.) (citations omitted.)

Defendants argue Justice's statements are clearly privileged because he made them to defend his and the Greenbrier's reputation and limited such statements to only those persons with a

7

legitimate interest in the subject matter. Defendants argue that the renovation of the Old White Course for a PGA Tour event was of great public interest to the national and regional press. They argue that the Plaintiffs purposefully involved the media to apply public pressure on Justice and the Greenbrier. However, Defendants put forth no evidence to support the proposition that Plaintiffs did anything other than file their original Complaint. Defendants argue that Mr. Justice made the allegedly defamatory statements in response to media inquiries that arose after Plaintiffs filed their Complaint. Further, Defendants argue Justice's statements only revealed the Defendants "planned legal defenses and counterclaims."

In response, Plaintiffs argue the following: (1) Defendants failed to limit their publication of defamatory statements to individuals with a legitimate interest in the statements; (2) Defendants did not make the statements in good faith and (3) Defendants abused any privilege that may have been applicable. (Document 127 at 7.) It appears the Plaintiffs concede that Justice's statements were about an issue in which he had a legitimate interest to make comments. Thus, the Court need only consider whether Defendants met their burden to show the statements were made in good faith and whether Justice's statements were limited to persons who have a legitimate interest in the subject matter.

After review of the parties' arguments, it is clear that Defendants failed to meet their initial burden to demonstrate a qualified privilege applies to Mr. Justice's statements. Although the parties argue at great lengths about whether Mr. Justice abused the qualified privilege, Defendants fail to put forth any argument or evidence that the statements were made in good faith to support a qualified immunity defense. Defendants mistakenly focus only on whether the publication of Mr. Justice's statements was limited to those persons who have a legitimate interest in the subject matter. However, the Court, at this point, need not address whether the publication was so limited

8

to determine whether the Defendants enjoy a qualified privilege. This is true in light of Defendants' failure to establish that Mr. Justice's statements were made in good faith. Moreover, even if Defendants met their initial burden to establish that a qualified privilege exists, genuine issues of material fact exist as to whether Mr. Justice abused such privilege. In light of Defendants' failure to meet their burden, the Court finds that Defendants' motion for summary judgment based on qualified immunity should be denied.

### *2. Opinion and Hyperbole*

Next, Defendants argue Mr. Justice's statements are constitutionally protected as opinion and hyperbole statements. (Document 117 at 16.) They argue that a statement cannot be defamatory if the statement is pure opinion or hyperbole, which is incapable of being proven false. (*Id*.) In support, Defendants argue "statements of opinion are absolutely protected under the First Amendment and cannot form the basis for a defamation action." (*Id*.) (citing *Maynard v. Daily Gazette Co.,* 191 W.Va. 601, 603 (1994) (quoting *Long*, 176 W.Va. 628 (1986)). (emphasis removed). Further, Defendants argue rhetorical hyperbole used in a "loose, figurative sense" cannot be defamatory. (*Id*.) (citing *Yoder v. Workman*, 224 F. Supp. 2d 1077, 1081 (S.D. W. Va. 2002). Defendants claim the facts of *Hupp v. Sasser,* 200 W. Va. 791 (1997) serve as a prime example of why Mr. Justice's statements are protected statements of opinion and hyperbole. Defendants argue that "most – if not all – of the statements GGD complains of are the type of pure opinion rejected as the basis for defamation under *Hupp*." Defendants contend that "[l]ike being a 'bully' or being 'unprofessional' or 'unacceptable,' others may not come to the same conclusion as Mr. Justice that GGD's work was, for example, 'sub-par' and 'horrible.'" (Document 117 at 17-18.) Defendants argue Justice's statements that the work was "off the chart," that there was

9

"extreme over-charging," and that the "work wasn't going to get done" are not provably false and thus must be dismissed. (*Id*. at 18.) Finally, the Defendants assert that "many of Mr. Justice's statements are obvious hyperbole, which too is constitutionally-protected speech." (*Id*.)

In response, Plaintiffs first argue the Defendants' statement that "Aspen and Lester George were in charge of flower beds in various areas, and it was not getting done, and the work was sub-par, it was off the chart" is provably true or false. (Document 127 at 17-18.) Second, Plaintiffs claim that Justice's statement that the soil was "toxic" can be determined to be true or false. (*Id*. at 18.) Moreover, Plaintiffs contend that "one can factually establish whether GGD had any responsibility for the soil on the Old White Course." (*Id*.) Third, they assert Justice's statement that all of the flowers died before the Greenbrier Classic and died again after the tournament can be determined to be true or false. (*Id*. at 18) Additionally, Plaintiffs argue factual issue exists as to whether the Plaintiffs were responsible for the flowers that died because they were terminated on July 7, 2010, and that the cause of the flowers dying is a matter of provable fact. (*Id*. at 19.) Fourth, Plaintiffs argue Justice's statements that the work was not being completed in a timely fashion can be proven to be true or false. (*Id*. at 19.) Finally, Plaintiffs contend Justice's statement that "[t]here was extreme over-charging – ridiculous over-charging" can be proven true or false. (*Id*.) Thus, Plaintiff's position is that none of these statements are protected opinion because such statements can be proven true or false. (*Id*. at 20) Plaintiffs also claim, in response, that Justice's defamatory statements were not statements of a vague opinion, but statements directly attacking the Plaintiffs' aptitude and work performance based on undisclosed facts. (Document 18 at 20-21.)

"A statement of opinion which does not contain a provably false assertion of fact is entitled to full constitutional protection." Syllabus point 4, *Maynard v. Daily Gazette Co.,* 191 W.Va. 601,

10

447 S.E.2d 293 (1994). "[W]hether a statement is one of fact or opinion is an issue that must be decided initially by a court." Syl. pt. 7, in part, *Long v. Egnor,* 176 W.Va. 628 (1986).

By stating that "most" of Justice's statements are opinions, Defendants appear to concede that some of Justice's statements are not opinion. The court will not engage in a guessing game as to which statements Defendants believe were protected opinions. Thus, the Court will only consider Defendants' "opinion" argument relative to the statements Defendants specifically argue are protected opinions.

First, with respect to Justice's statements that Plaintiff's work was "sub-par," "horrible," and "off the charts," the Court finds such statements are not statements of protected opinion but rather contain a provable assertion. In the context of the landscaping work performed by Plaintiffs, Justice's statements directly attack the professional aptitude and work performance of the Plaintiffs. In other words, whether Plaintiff's work was below the standard of work expected of landscaping companies in the business (ie "sub-par") can be determined to be true or false. Unlike *Hupp*, where the Court determined a professor's statement that the Plaintiff was a "bully" was a subjective opinion, here, Justice's statements about the quality of work performed is a provable assertion of fact and, thus, not a subjective opinion. *Hupp*, 200 W. Va. at 798. Consequently, Defendants are not entitled to summary judgment on Plaintiffs' defamation claim based on the aforementioned statements.

Second, with respect to Justice's statements that "[t]here was extreme over-charging – ridiculous over-charging," the Court finds such statements are not merely statements of protected opinion, but, rather, contain a provable assertion. Either there was or there was not overcharging. Thus, Defendants are not entitled to summary judgment on Plaintiffs' defamation claim based on this statement of "over-charging."

11

Third, with respect to Justice's statements that the "work wasn't getting done," the Court finds such statements are not statements of protected opinion, but, again, contain provable assertion. Either Plaintiffs were or were not getting the work done in line with the timeframe required for the landscaping project. Defendants are, therefore, not entitled to summary judgment on Plaintiffs' defamation claim based on the statement regarding untimely work.

Finally, to the extent that Defendants argue "Mr. Justice's statements are obvious hyperbole, which too is constitutionally-protected speech," the Court need not address such argument. It is Defendants' burden to direct the Court to the statements which they contend are constitutionally protected as "hyperbole." The Court will not engage in guessing which of the "many" statements Defendants contend are protected as hyperbole.

### 3. *Substantially True*

Defendants argue that summary judgment is also proper because the statements at issue were substantially true. (Document 117 at 18.) Since falsity is an element of defamation, Defendants argue statements that are "substantially true" are protected free speech. Specifically, Defendants argue the statements that the soil was "toxic" are substantially true. In support, Defendants cite Joey Cochran's affidavit which states that soil tests "revealed that the soil in all of the annual beds contained high pH levels detrimental to annual flowers and was otherwise lacking in the proper level of certain nutrients needed to grow annual flowers." (*Id.* at 20) (citing Ex. B, Cochran Affid. ¶7.) In response, Plaintiffs indicate that Mr. Cochran, the Greenbrier's client representative, "asserted under oath that Plaintiffs had nothing to do with the soil," and that contemporaneous tests by Aspen demonstrate that the soil on the Old White Course was suitable for the plant material installed. (*Id.*) Further, Plaintiffs argue the soil test on which the

12

Defendants rely only tested the soil located in Tee Box #1.

Defendants specifically argue the statements that all of the flowers died is substantially true because nearly all of the flowers did, in fact, die. In response, Plaintiffs argue that Defendants attempted to rewrite Justice's statement because he said that all the flowers died twice (before and after the Greenbrier Classic) rather than simply "all the flowers died." The Plaintiffs also point out that Defendants admit Justice's statement was an exaggeration. Plaintiffs argue there is ample evidence to demonstrate that neither all nor substantially all of the flowers died prior to the Greenbrier Classic. (Document 127 at 23.) In support, Plaintiffs rely on Mr. Cochran's statements that it would be false to say that all the flowers died before or even after the tournaments. Finally, Plaintiffs claim genuine issues of material fact remain as to whether they were responsible for any of the flowers that died.

When viewing the parties' respective evidence as to whether the soil was toxic and whether all or most of the flowers died, the Court finds genuine issues of material fact exist as to whether Mr. Justice's statements were substantially true. Accordingly, Defendants are not entitled to summary judgment on the basis that said statements were substantially true.

### *B. Plaintiffs' Motion for Partial Summary Judgment*

In light of the Court's rulings on Defendants' motion for summary judgment *supra*, no further discussion or elaboration is necessary to support this Court's finding that, when viewing the facts in a light most favorable to Defendants, genuine issues of material fact exist with respect to whether Justice's statements were privileged and as to whether such statements were false. Therefore, Plaintiffs' are not entitled to partial summary judgment.

*CONCLUSION*

WHEREFORE, based on the findings herein, the Court does hereby **ORDER** that the *Motion for Partial Summary Judgment by Defendants Greenbrier Hotel Corporation and James C. Justice, II* (Document 114) and *Plaintiffs' Motion for Partial Summary Judgment Regarding the Defamatory Per Se Comments of James C. Justice II* (Document 119) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: October 4, 2012

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA